440 S.E.2d 111 (1994)
113 N.C. App. 505
Patricia W. FRIEL
v.
ANGELL CARE INCORPORATED and Don G. Angell.
No. 9221SC1305.
Court of Appeals of North Carolina.
February 1, 1994.
*112 Kennedy, Kennedy, Kennedy & Kennedy by Harold L. Kennedy, III and Harvey L. Kennedy, Winston-Salem, for plaintiff-appellant.
Robinson Maready Lawing & Comerford by Robert J. Lawing and Jane C. Jackson, Winston-Salem, for defendants-appellees.
WYNN, Judge.
Plaintiff Patricia W. Friel was employed as a secretary by defendant company Angell Care Incorporated ("Angell Care") from July 1982 until 17 April 1987. She held several positions within the company before being assigned to be the personal secretary to Bruce Smith, a new vice-president of the company. On or about 18 March 1987, plaintiff alleged that Smith had sexually harassed her. On 17 April 1987, plaintiff entered into a settlement agreement signed by Angell Care's president, Dennis Young, on behalf of Angell Care. Under the terms of the agreement, plaintiff would leave the company and would not discuss the terms and contents of the agreement. Angell Care would pay plaintiff $9566.63; would not discuss the terms or contents of the agreement with plaintiff's prospective employers; and would provide her prospective employers with neutral employment references.
After leaving Angell Care, plaintiff stayed home with her children, intermittently caring for other children in her home.
During the week of 23 May 1988, plaintiff testified against Angell Group Inc., a company related to Angell Care, pursuant to a subpoena in the case of Angell Group, Inc., et al. v. Bowling Green Health Care Center, Inc., et al., 86 CVS 3807, in Forsyth County Superior Court.
In approximately June or July 1990, plaintiff applied for several secretarial positions. She contacted a local attorney, Meyressa Schoonmaker, for employment, either with Schoonmaker's law practice or with the North Carolina Center for Laws Affecting Women ("NCLAW"), an organization of which Schoonmaker was the president and *113 legal director. Plaintiff submitted an application to Schoonmaker, listing her last employer as Angell Care and giving the names of Don Angell and Stewart Swain. Schoonmaker asked a NCLAW employee, Linda Parker, to contact Angell and Swain. Parker contacted Angell. She asked him if he would rehire plaintiff. When he said he would not, Parker asked why. Parker's and Angell's accounts of his response differ. Angell testified that he said, "there was an unproven sexual harassment charge when she left," and that he "was not aware of the details." Parker's written notes of the conversation state, "Angell said ... that [plaintiff] left under adverse (?) circumstances, and he really could not discuss the circumstances." Plaintiff was not offered either position with Schoonmaker.
In August 1990, plaintiff asked Sherrill Horton, a friend who worked for a law firm, if she knew anyone who needed a secretary. Horton said that she did not know if the firm had any openings, but one of the attorneys was unhappy with his current secretary. Plaintiff asked Horton to call Don Angell for a reference, because she wanted to know why Angell Care would not rehire her. Horton called Don Angell, indicating that she was calling him on behalf of her firm because plaintiff had listed him as a reference in applying for a job there, even though plaintiff had not actually submitted an application. Horton testified, and Angell confirmed, that she asked if the company would rehire plaintiff; he said it would not; and he said plaintiff had accused a male employee of sexual harassment, but the charge was never proven. Horton further testified that Angell said that plaintiff left the company under adverse circumstances and that she was difficult to work with.
On 19 October 1990, plaintiff sued Angell Care and Don Angell for compensatory and punitive damages. Plaintiff alleged that Angell and Angell Care had breached the settlement contract; committed slander per se; maliciously interfered with her contractual rights; and blacklisted her in violation of N.C.Gen.Stat. § 14-355.
Defendants moved for summary judgment on all the claims. The motion was heard on 16 July 1992. By written order and judgment entered 23 July 1992, the court granted summary judgment for defendants on the slander, malicious interference with contractual rights, and blacklisting claims. On 21 July 1992, plaintiff filed a voluntary dismissal without prejudice of her breach of contract claim.
Plaintiff appealed the claims of slander per se, malicious interference with contractual rights, and blacklisting, as to both defendants.

I.
Plaintiff contends that Angell's statements to Parker and Horton were slander per se because they impeached her in her profession.
Initially, we uphold summary judgment on the portion of the slander action that is based on Angell's statements to Horton. All the evidence indicates that the conversation between Angell and Horton took place at the request and direction of the plaintiff. A communication to the plaintiff, or to a person acting at the plaintiff's request, cannot form the basis for a libel or slander claim. See Pressley v. Continental Can Co., Inc., 39 N.C.App. 467, 469, 250 S.E.2d 676, 678, disc. rev. denied, 297 N.C. 177, 254 S.E.2d 37 (1979) ("A publication of a libel, procured or invited by the plaintiff, is not sufficient to support an action for defamation."); see also Taylor v. Jones Bros. Bakery, Inc., 234 N.C. 660, 68 S.E.2d 313 (1951) overruled on other grounds, Hinson v. Dawson, 244 N.C. 23, 92 S.E.2d 393 (1956) (A statement "invited or procured by plaintiff, or by a person acting for him, is not sufficient to support an action for defamation."). In this case, Horton contacted Angell because plaintiff had asked her to "check out (her) references," not because Horton's employer had independently wished to contact Angell. Under these circumstances, plaintiff has no claim for defamation based on any statement made to Horton.
This leaves us with the statements made to Linda Parker. A claim of slander per se has three essential elements:
To establish a claim for slander per se, a plaintiff must prove: (1) defendant spoke *114 base or defamatory words which tended to prejudice him in his reputation, office, trade, business or means of livelihood or hold him up to disgrace, ridicule or contempt; (2) the statement was false; and (3) the statement was published or communicated to and understood by a third person. West v. King's Dep't Store, Inc., 321 N.C. 698, 703, 365 S.E.2d 621, 624 (1988). See also Andrews v. Elliot, 109 N.C.App. 271, 426 S.E.2d 430 (1993); Morrow v. Kings Dep't Stores, Inc., 57 N.C.App. 13, 290 S.E.2d 732, disc. rev. denied, 306 N.C. 385, 294 S.E.2d 210 (1982).
We find that plaintiff has not met the second element of this cause of action. Plaintiff never established that Angell's statements to Parker were false. Angell said that he would not rehire plaintiff; there was an unproven sexual harassment charge when she left the company; and, viewing the evidence in the best light for plaintiff, that plaintiff left the company under adverse circumstances. All the evidence suggests that the statements were in fact true. Plaintiff left the employment of defendant pursuant to a negotiated settlement after making a claim of sexual harassment which was not proven. A description of this situation as "adverse circumstances" does not seem inaccurate.
We note that defendant's statements to Parker and Horton may well have been in breach of the settlement agreement between plaintiff and defendant Angell Care, Inc. However, because plaintiff voluntarily dismissed her claim for breach of contract, issues relating to performance of that contract are not before us today.

II.
Plaintiff next contends that defendant maliciously interfered with her right to enter into an employment contract with Meyressa Schoonmaker and the North Carolina Center for Laws Affecting Women. In order to state a claim for malicious interference with contract, plaintiff must establish that the defendant's actions were malicious in the legal sense. Murphy v. McIntyre, 69 N.C.App. 323, 317 S.E.2d 397 (1984). To establish legal malice, a plaintiff must show that defendant interfered "with design of injury to plaintiff or gaining some advantage at his expense." Johnson v. Gray, 263 N.C. 507, 509, 139 S.E.2d 551, 553 (1965). Plaintiff never established that defendant intended to injure her or gain some advantage at her expense. The only evidence of malice plaintiff put forth is her belief that Angell felt ill will toward her because after she testified adversely to defendants in the Bowling Green Health Care case, Angell raised his voice and exhibited anger toward the other party (not toward her). Plaintiff's speculation, without any facts to support it, is clearly insufficient to meet her burden of proof. A party cannot prevail against a motion for summary judgment by relying on "conclusory allegations, unsupported by facts." Campbell v. Board of Education of Catawba County, 76 N.C.App. 495, 498, 333 S.E.2d 507, 510 (1985), disc. rev. denied, 315 N.C. 390, 338 S.E.2d 878 (1986). We affirm summary judgment for defendant on the malicious interference with contract claim.

III.
Plaintiff's third claim is that defendant Angell's conversations with Parker and Horton violated N.C.Gen.Stat. § 14-355, which prohibits blacklisting employees. Under this statute, an employer may be liable if, after discharging someone from employment, it prevents or attempts to prevent that person from obtaining employment:
If any person, agent, company or corporation, after having discharged any employee from his or its service, shall prevent or attempt to prevent, by word or writing of any kind, such discharged employee from obtaining employment with any other person, company or corporation, such person, agent or corporation shall be guilty of a misdemeanor and ... shall be liable in penal damages to such discharged person, to be recovered by civil action. This section shall not be construed as prohibiting any person ... from furnishing in writing, upon request, any other person, company or corporation to whom such discharged person has applied for employment, a truthful statement of the reason for such discharge.
N.C.Gen.Stat. § 14-355 (Supp.1993).
However, statements made about a former employee in response to a request *115 from a prospective employer are privileged under § 14-355. For the statute to be violated, the statements to the prospective employer would have had to have been unsolicited. Seward v. Seaboard Air Line Railway, 159 N.C. 241, 75 S.E. 34 (1912); Goins v. Sargent, 196 N.C. 478, 146 S.E. 131 (1929). Plaintiff admits here that Don Angell's statements came only upon inquiry from people he believed to be prospective employers of his former employee. We therefore hold that N.C.Gen.Stat. § 14-355 does not apply as a matter of law and uphold summary judgment for defendants.
Affirmed.
LEWIS and McCRODDEN, JJ., concur.