KELLY DONOVAN AND TONYA HUNTER v. RICHARD FIUMARA

No. 9218SC582

(Filed 3 May 1994)

1. **Libel and Slander § 35 (NCI4th)— failure to allege special damages—failure to state a claim for slander per quod**

It was uncontroverted that plaintiffs failed to state a claim for slander *per quod* where the complaint contained no assertion of special damages, and plaintiffs in their appellate brief conceded the absence of such allegation.

**Am Jur 2d, Libel and Slander §§ 399 et seq.**

2. **Libel and Slander § 14 (NCI4th)— falsely claiming person gay or bisexual—no imputation of crime—no slander per se**

There was no merit to plaintiffs' contention that, because engaging in certain activity practiced by homosexuals is a felony in North Carolina, falsely claiming plaintiffs were gay or bisexual imputed to them commission of a crime, and this language thus fell within the first class of utterances considered slanderous *per se*, since referring to a person as gay or bisexual is not tantamount to charging that individual with the commission of a crime violative of N.C.G.S. § 14-177.

**Am Jur 2d, Libel and Slander §§ 27 et seq.**

**Imputation of homosexuality as defamation. 3 ALR4th 752.**

**Imputation of criminal, abnormal, or otherwise offensive sexual attitude or behavior as defamation—post-New York Times cases. 57 ALR4th 404.**

3. **Libel and Slander § 13 (NCI4th)— slander per se—three categories—holding person up to disgrace, ridicule, or contempt—no fourth category of slander per se**

There was no merit to plaintiffs' contention that dictum taken from *West v. King's Dept. Store, Inc.*, 321 N.C. 698, and repeated or cited by the Court of Appeals in subsequent decisions indicates that North Carolina courts have judicially extended the traditional categories of slander *per se* beyond those of infamous crime, loathsome disease, and impeachment in trade or profession to create another category of holding a person up to disgrace, ridicule, or contempt, words which

DONOVAN v. FIUMARA

[114 N.C. App. 524 (1994)]

regularly appear in libel cases, and the Court of Appeals reaffirms the historical distinction between libel and slander.

**Am Jur 2d, Libel and Slander §§ 71 et seq.**

4. **Libel and Slander § 13 (NCI4th)— allegation that person is gay or bisexual—person not held up to disgrace, ridicule, or contempt**

Even if *West v. King's Dept. Store, Inc.*, 321 N.C. 698, did create a new class of slander *per se*, which assumption the Court expressly rejects, the Court is unable to rule the bare allegation that an individual is gay or bisexual constitutes today an accusation which, as a matter of law and absent any extrinsic, explanatory facts, *per se* holds that individual up to disgrace, ridicule or contempt.

**Am Jur 2d, Libel and Slander §§ 71 et seq.**

**Imputation of homosexuality as defamation. 3 ALR4th 752.**

Appeal by plaintiffs from judgment entered 12 May 1992 by Judge Judson D. DeRamus, Jr. in Guilford County Superior Court. Heard in the Court of Appeals 29 April 1993.

*Smith, Follin & James, by Norman B. Smith, for plaintiff-appellants.*

*Frazier, Frazier & Mahler, by James D. McKinney and Torin L. Fury, for defendant-appellee.*

*Moore and Brown, by David B. Puryear, Jr., for defendant-appellee.*

JOHN, Judge

On 21 December 1990, plaintiffs filed suit against defendant for slander, setting out in their complaint the following pertinent allegations:

3. In January, 1990, and again in June, 1990, defendant stated to other persons that plaintiffs are gay and bisexual.

4. Defendant's statements concerning plaintiffs were and are false.

5. Defendant's statements concerning plaintiffs amount to slander.

6. Proximately, solely, and directly as a result of defendant's statements concerning plaintiffs, plaintiffs have suffered injury to their reputation, humiliation, embarrassment, anxiety, and other emotional distress. Plaintiffs' actual damages, incurred and to be incurred, are in an amount in excess of $10,000.00 as to each of the plaintiffs.

In answer thereto, defendant moved to dismiss the complaint pursuant to N.C.R. Civ. P. 12(b)(6) (1990) for failure to state a claim upon which relief could be granted. After a hearing, the court allowed defendant's motion by judgment entered 12 May 1992. Plaintiffs appeal, contending the allegations of the complaint set forth a cause of action for slander. We disagree and affirm the action of the trial court.

A motion to dismiss made pursuant to Rule 12(b)(6) tests the legal sufficiency of the pleading against which it is directed. *Hendrix v. Hendrix*, 67 N.C. App. 354, 356, 313 S.E.2d 25, 26 (1984). In ruling upon such a motion, the trial court is to construe the pleading liberally, *Dixon v. Stuart*, 85 N.C. App. 338, 340, 354 S.E.2d 757, 758 (1987) (citation omitted), and in the light most favorable to the plaintiff, *Ford v. Peaches Entertainment Corp.*, 83 N.C. App. 155, 156, 349 S.E.2d 82, 83 (1986), *disc. review denied*, 318 N.C. 694, 351 S.E.2d 746 (1987), taking as true and admitted all well-pleaded factual allegations contained within the complaint. *Johnson v. Bollinger*, 86 N.C. App. 1, 4, 356 S.E.2d 378, 381 (1987). A Rule 12(b)(6) motion to dismiss should be granted only when the factual allegations, so considered, fail as a matter of law to state the substantive elements of some legally recognized claim. *See, e.g., Hendrix*, 67 N.C. App. at 356, 313 S.E.2d at 26-27.

Based upon plaintiffs' contention, the sole question before us is whether the allegations of the complaint, liberally construed and all taken as true (including the assertion defendant made the statements in question as well as the claim the comments were false), set out a cause of action for slander.

Slander has been defined by this Court as "oral defamation," *see, e.g., Tallent v. Blake*, 57 N.C. App. 249, 251, 291 S.E.2d 336, 338 (1982), or "the *speaking* [as opposed to the *writing*] of base or defamatory words which tend to prejudice another in his reputation, office, trade, business, or means of livelihood." *Morrow v. Kings Department Stores*, 57 N.C. App. 13, 20, 290 S.E.2d 732, 736 (emphasis added) (citation omitted), *disc. review denied*, 306

N.C. 385, 294 S.E.2d 210 (1982). To be actionable, any such defamatory statement must be false, and must be communicated (published) to some person or persons other than the individual defamed. *Id.* (citations omitted).

Our courts have long recognized two actionable classes of oral defamation: slander *per se* and slander *per quod*:

> That is, the false remarks in themselves (*per se*) may form the basis of an action for damages, in which case both malice and damage are, as a matter of law, presumed; or the false utterance may be such as to sustain an action only when causing some special damage (*per quod*), in which case both the malice and the special damage must be alleged and proved.

*Beane v. Weiman Co., Inc.*, 5 N.C. App. 276, 277, 168 S.E.2d 236, 237 (1969) (citations omitted).

[1] Slander *per quod* involves a spoken statement of which the harmful character does not appear on its face as a matter of general acceptance, but rather becomes clear "only in consequence of extrinsic, explanatory facts showing its injurious effect . . . ." *Badame v. Lampke*, 242 N.C. 755, 757, 89 S.E.2d 466, 467-68 (1955). In such cases, "the injurious character of the words and some special damage must be pleaded and proved." *Beane*, 5 N.C. App. at 278, 168 S.E.2d at 238 (citations omitted). In the context of an action for defamation, special damage means "pecuniary loss," *Williams v. Freight Lines and Willard v. Freight Lines*, 10 N.C. App. 384, 387, 179 S.E.2d 319, 322 (1971) (citations omitted); "emotional distress and mental suffering are not alone sufficient . . . ." *Id.* at 390, 179 S.E.2d at 324. In the case *sub judice*, plaintiffs' complaint contains no assertion of special damages, and in their appellate brief they concede the absence of such allegation. Therefore, it is uncontroverted plaintiffs failed to state a claim for slander *per quod*.

However, plaintiffs argue before us that the trial court misapprehended the legal theory under which they were proceeding, and that the allegations of the complaint constitute a claim for relief based upon slander *per se*.

For decades, judicial formulations of the categories of utterances considered slander *per se* have varied not at all in substance. This Court has consistently stated that only three types of defamatory statements, if published to a person other than the one defamed, will support an action for slander *per se*: "those which [1] charge

plaintiff with a crime or offense involving moral turpitude, [2] impeach his trade or profession, or [3] impute to him a loathsome disease." *Id.* at 388, 179 S.E.2d at 322. *See also U v. Duke University*, 91 N.C. App. 171, 182, 371 S.E.2d 701, 709 (citation omitted), *disc. review denied*, 323 N.C. 629, 374 S.E.2d 590 (1988); *Morris v. Bruney*, 78 N.C. App. 668, 675, 338 S.E.2d 561, 566 (1986) (citations omitted).

When language falling within one of these categories is spoken, the "law raises a *prima facie* presumption of malice and a conclusive presumption of legal injury and damage . . . ." *Badame*, 242 N.C. at 756, 89 S.E.2d at 467. Indeed, "the mode of proving the resultant damage" is the primary difference between slander actionable *per se* and *per quod. Id.* "As to words actionable *per se*, the law treats their injurious character as a fact of common acceptance, and consequently the courts take judicial notice of it." *Id.* Therefore, a plaintiff may recover under a theory of slander *per se* without specifically pleading or proving special damages. *Id.* (citations omitted).

Although the three *per se* categories mentioned above have developed as exceptions to the original rule that slander was not actionable without allegation and proof of special damages, *see* W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 112, at 788-92 (5th ed. 1984), "[t]he policy of the law has much restricted the range of defamatory utterances which are actionable *per se." Penner v. Elliott*, 225 N.C. 33, 34, 33 S.E.2d 124, 125 (1945). Consequently courts have consistently refrained from expanding the number or the scope of categories of spoken defamatory words which are actionable without allegation and proof of damages. *See Hayes v. Smith*, 832 P.2d 1022, 1024, 1025 (Colo. Ct. App. 1991) (interprets certain U.S. Supreme Court decisions as "furthering . . . trend to limit and not expand the use of *per se* characterizations and presumed damages in defamation cases").

Bearing these principles in mind, we now consider whether defendant's comments regarding plaintiffs fall within any of the three traditional categories of slander *per se.*

[2] Defendant allegedly referred to plaintiffs as being "gay" and "bisexual." This simple statement neither impeaches plaintiffs in their trade or business (the second traditional category of utterances considered slanderous *per se*) nor alleges them to have a "loathsome disease" (the third traditional category), and plaintiffs do not main-

DONOVAN v. FIUMARA

[114 N.C. App. 524 (1994)]

tain otherwise. Plaintiffs argue in their brief, however, that because engaging in certain activity practiced by homosexuals is a felony in North Carolina, see N.C. Gen. Stat. § 14-177 (1993), falsely claiming plaintiffs are gay or bisexual *imputes* to them commission of a crime, and thus falls within the first class of utterances considered slanderous *per se*.

In support of their position, plaintiffs rely on the following language from the Restatement (Second) of Torts: "[o]ne who publishes a slander that imputes serious sexual misconduct to another is subject to liability to the other without proof of special damages." Restatement (Second) of Torts § 574, at 195 (1977). Additionally, plaintiffs call to our attention case law from the state of Texas. See *Buck v. Savage*, 323 S.W.2d 363 (Tex. Civ. App. 1959); *Head v. Newton*, 596 S.W.2d 209 (Tex. Civ. App. 1980). However, we find plaintiff's argument and these authorities unpersuasive.

G.S. § 14-177 provides as follows:

If any person shall commit the crime against nature, with mankind or beast, he shall be punished as a Class H felon.

The crime against nature referred to in the statute:

includes acts with animals and acts between humans *per anum* and *per os*. . . . "[O]ur statute is broad enough to include in the crime against nature other forms of the offense than sodomy and buggery. It includes all kindred acts of a bestial character . . . ."

*State v. Harward*, 264 N.C. 746, 746, 142 S.E.2d 691, 692 (1965) (citations omitted) (quoting *State v. Griffin*, 175 N.C. 768, 769, 94 S.E. 678, 679 (1917)). Thus, the statute prohibits conduct not necessarily embraced within the terms "gay" and "lesbian." See, e.g., *Stein v. Trager*, 36 Misc.2d 227, 228, 232 N.Y.S.2d 362, 364 (1962); *contra Nowark v. MaGuire*, 22 A.D.2d 901, 902, 255 N.Y.S.2d 318, 319 (1964). Nonetheless, "though penetration by or of a sexual organ is an essential element . . . , the crime against nature is not limited to penetration by the *male* sexual organ, *State v. Joyner*, 295 N.C. 55, 66, 243 S.E.2d 367, 374 (1978) (citation omitted), and includes cunnilingus. See *State v. Thacker*, 301 N.C. 348, 356, 271 S.E.2d 252, 257 (1980). However, the statute neither by its terms nor by judicial gloss proscribes sexual preference or the status of being homosexual; in order to violate the statute, a person must commit one of the specific acts coming within the purview of the

statute. *See Joyner*, 295 N.C. at 66, 243 S.E.2d at 374. No allegations in plaintiffs' complaint assert defendant made a statement that plaintiffs engaged in any *act*.

Further, while the Texas case law cited by plaintiffs is to the contrary, numerous other courts considering the question have concluded that a simple statement descriptive of an individual's alleged sexual orientation does not as a matter of law impute to that individual commission of a crime.

For example, the Illinois Court of Appeals in *Moricoli v. Schwartz*, 361 N.E.2d 74 (Ill. Ct. App. 1977), found that while defendant's reference to plaintiff as a "fag" could reasonably only be interpreted to assert plaintiff was homosexual, "[t]he statements complained of . . . do not, of themselves, import commission of a crime . . . ." *Id.* at 76. Similarly, the Supreme Court of Rhode Island has stated:

> we are . . . of the opinion that the mere use of the term in question [meaning coition by one man with another *per os*] . . . unaccompanied by language or other circumstances which, fairly considered, would be understood as charging the plaintiff with having actually committed an act of unnatural coition, is insufficient to support an action for slander.

*Morrissette v. Beatte*, 17 A.2d 464, 465 (R.I. 1941). Finally, the Court of Appeals for the District of Columbia Circuit recently struck down a Department of Defense directive barring persons of homosexual orientation from serving in our nation's armed forces. *Steffan v. Aspin*, 62 U.S.L.W. 2309 (D.C. Cir. Nov. 16, 1993). The court pointedly observed:

> The secretary's justification for the gay ban presumes that a certain class of persons will break the law or [military] rules solely because of their thoughts and desires. This is inherently unreasonable.
>
> . . . .
>
> . . . A person's status alone . . . is an inadequate basis upon which to impute misconduct. Accordingly, the secretary's "propensity" argument, which presumes that "desire" will lead to misconduct, is illegitimate as a matter of law.

*Id.* at 2309-10.

DONOVAN v. FIUMARA

[114 N.C. App. 524 (1994)]

We agree with these courts that referring to a person as "gay" or "bisexual" is not tantamount to charging that individual with the commission of a crime violative of G.S. § 14-177. The "law contemplates that in order to be actionable *per se* a false statement must impute that a person is guilty of a punishable offense." *Williams*, 10 N.C. App. at 388, 179 S.E.2d at 323 (accusing plaintiffs of being "gangsters" did not charge them with a "specific crime for which they could be indicted and punished"); *see also Stutts v. Power Co.*, 47 N.C. App. 76, 82, 266 S.E.2d 861, 865 (1980) (calling plaintiff "dishonest" or charging that plaintiff was untruthful not actionable *per se*); *cf.* Charles T. McCormick, *The Measure of Damages for Defamation*, 12 N.C.L. Rev. 120, 121-122 (1934) (statement that individual is a "thief" would be slander *per se*). Moreover, the label of "gay" or "bisexual" does not carry with it an automatic reference to any particular sexual activity; indeed, as the District of Columbia appellate court pointed out, it does not necessarily connote sexual activity at all, but rather inclination or preference. *Steffan*, 62 U.S.L.W. at 2309-10.

Based on the foregoing, therefore, we hold as a matter of law that defendant's alleged statements about plaintiffs, liberally construed and taken as true, do not fall within any of the three traditional categories of defamatory utterances considered slanderous *per se*. Consequently, plaintiffs' allegations could support only an action based upon slander *per quod*. As indicated above, this would require the pleading of special damages concededly absent in this case.

[3] Our consideration of plaintiffs' appeal would ordinarily end at this point; however, plaintiffs' primary argument before us is that phraseology taken from a recent decision of our Supreme Court, *West v. King's Dept. Store, Inc.*, 321 N.C. 698, 365 S.E.2d 621, (1988), and repeated or cited by this Court in certain subsequent decisions, *see Friel v. Angell Care Inc.*, 113 N.C. App. 505, 440 S.E.2d 111 (1994); *Shillington v. K-Mart Corp.*, 102 N.C. App. 187, 402 S.E.2d 155 (1991); and *Harris v. Temple*, 99 N.C. App. 179, 392 S.E.2d 752, *disc. review denied*, 327 N.C. 428, 395 S.E.2d 678 (1990), indicates our courts have judicially "extended [the] traditional categories" of slander *per se*. Plaintiffs insist *West* makes it "very clear that defamation *per se* is not limited to the classic categories of infamous crime, loathsome disease, and impeachment in trade or profession." We disagree.

The plaintiffs in *West* were accused of having stolen items they had actually purchased from defendant department store. Plaintiffs subsequently brought suit alleging, *inter alia*, slander *per se*. At the close of plaintiffs' evidence, the trial court directed verdict in favor of defendant; this Court affirmed on the grounds of insufficiency of the evidence. In discussing the propriety of the trial court's ruling with respect to the slander *per se* claim, our Supreme Court stated:

> To establish a claim for slander *per se*, a plaintiff must prove: (1) defendant spoke base or defamatory words which tended to prejudice him in his reputation, office, trade, business or means of livelihood *or hold him up to disgrace, ridicule or contempt*; (2) the statement was false; and (3) the statement was published or communicated to and understood by a third person.

*West*, 321 N.C. at 703, 365 S.E.2d at 624-25 (emphasis added) (citing *Presnell v. Pell*, 298 N.C. 715, 260 S.E.2d 611 (1979); *Morrow v. Kings Department Stores*, 57 N.C. App. 13, 290 S.E.2d 732, *disc. review denied*, 306 N.C. 385, 294 S.E.2d 210 (1982) ). Plaintiffs rely on the italicized portion of this passage to support their argument that the traditional classifications of slander *per se* were broadened by the Court.

Prior to discussing plaintiffs' reliance on *West*, we briefly consider those recent decisions from this Court which have cited to or quoted from *West*. *See, e.g., Harris*, 99 N.C. App. at 181-82, 392 S.E.2d at 752-53; *Shillington*, 102 N.C. App. at 194, 402 S.E.2d at 159; *Friel*, 113 N.C. App. at 509, 440 S.E.2d at 113-14.

In *Harris*, defendant followed plaintiff to a store's exit door and accused her of writing a worthless check to purchase groceries. This Court held the facts were distinguishable from those in *West* because the plaintiff in *Harris* presented sufficient evidence the statements were published, heard and understood by onlookers. *Harris*, 99 N.C. App. at 181-82, 392 S.E.2d at 753. The *Shillington* Court, citing to *West*, merely stated: "To establish a claim for slander *per se*, a plaintiff must prove: (1) that defendant's statement was slanderous *per se*, (2) the statement was false, and (3) the statement was published or communicated to and understood by a third person." *Shillington*, 102 N.C. App. at 194, 402 S.E.2d at 159. Lastly, in *Friel*, although this Court quoted the precise language from *West* at issue in the case *sub judice*, we held summary judg-

DONOVAN v. FIUMARA

[114 N.C. App. 524 (1994)]

ment for defendant was proper because plaintiff had not produced evidence of the untruth of allegedly slanderous statements made about her (relating to her job performance). *Friel*, 113 N.C. App. at 509, 440 S.E.2d at 113-14. Accordingly, none of our cases citing *West* concern themselves, directly or indirectly, with whether there now exists a judicially created fourth category of defamatory utterances deemed slander *per se* — those tending to hold a person up to "disgrace, ridicule or contempt."

Returning to *West* itself, it is significant preliminarily to note the context in which the language used by the *West* Court arose. The Court stated "[t]o establish a claim for slander *per se*, a plaintiff must prove [the following three things]." *West*, 321 N.C. at 703, 365 S.E.2d at 624. Thus, the Court was merely listing the *elements* of a slander *per se* claim — not specific categories of slander *per se*. In affirming our ruling, the Court observed that "[p]laintiffs failed to produce any evidence that anyone, other than the plaintiffs themselves, heard the accusations made by defendant's manager." *Id.* at 704, 365 S.E.2d at 625. The Court thus based its decision upon plaintiffs' failure to prove publication (an **element** of *any* slander action) and the additional language (specifically the words "or [tended to] hold him up to disgrace, ridicule or contempt") was unnecessary to the court's holding and therefore dictum. *See* Black's Law Dictionary 454 (6th ed. 1990) ("Statements and comments in an opinion concerning some rule of law or legal proposition not necessarily involved nor essential to determination of the case in hand are *obiter dicta*, and lack the force of an adjudication."); *see also State v. Scoggin*, 236 N.C. 1, 13, 72 S.E.2d 97, 105 (1952) (Ervin, J., concurring) ("The various statements in the Court's opinion which were not necessary to the decision of that precise question constitute *obiter dicta* and have no effect as declaring the law."). Notably absent was any indication by the Court of its intent to establish a new category of slander *per se* (significant in light of the lack of prior case authority, *see infra*). Moreover, the Court did not address as such the **categories** of slander *per se* or within which particular category the statements at issue might fall. In that regard, we note the defendant in *West* indisputably charged plaintiffs with commission of the crime of theft (shoplifting).

In addition, the *West* Court referred to *Presnell v. Pell*, 298 N.C. 715, 260 S.E.2d 611 (1979) and *Morrow v. Kings Department Stores*, 57 N.C. App. 13, 290 S.E.2d 732 (1982), as authority for its statement regarding the elements of a claim of slander *per*

*se.* However, neither case contains the language employed by the *West* Court.

*Presnell* states: "[t]he rumors and accusations imputed reprehensible conduct to plaintiff and tended to prejudice her standing among her fellow workers, stain her character as an employee of the public school system, and damage her chances of securing other public employment in the future." *Presnell*, 298 N.C. at 719, 260 S.E.2d at 614. Our language in *Morrow* tracked the long-standing definition of slander generally (not slander *per se*) as "the speaking of base or defamatory words which tend to prejudice another in his reputation, office, trade, business or means of livelihood." *Morrow*, 57 N.C. App. at 20, 290 S.E.2d at 736 (citation omitted). Considered in view of the cases cited for authority, moreover, the dictum in *West* arguably could be read as merely descriptive of a manner of prejudicing one in that individual's business or means of livelihood by holding that person "up to disgrace, ridicule or contempt" *therein*. Such an interpretation is supported by previous case law from our Supreme Court directing that statements impeaching one's trade or profession must do more than merely injure a person "in his business [and] . . . (1) must touch the plaintiff in his special trade or occupation, and (2) must contain an imputation necessarily hurtful in its effect on his business." *Badame*, 242 N.C. at 757, 89 S.E.2d at 468 (citation omitted). Considering the *West* language as referring to trade or profession is further strengthened by the fact that our research reveals no case from this State's appellate courts prior to *West* which, in discussing the categories of slander, includes the phraseology "or hold him up to disgrace, ridicule or contempt." *West*, 321 N.C. at 703, 365 S.E.2d at 624. In the words of this Court as recently as 1986, "[t]his broad category [tending to subject one to ridicule, contempt or disgrace] is notably absent from decisions discussing slander," *Morris*, 78 N.C. App. at 675 n.4, 338 S.E.2d at 566 n.4.

However, the words "or hold [one] up to disgrace, ridicule or contempt" do regularly appear in cases concerning the tort of libel (written or printed defamation). *See, e.g., Renwick v. News and Observer and Renwick v. Greensboro News*, 310 N.C. 312, 317, 312 S.E.2d 405, 408-09, *reh'g denied*, 310 N.C. 749, 315 S.E.2d 704, *cert. denied*, 469 U.S. 858, 83 L.Ed.2d 121 (1984):

Under the well established common law of North Carolina, a libel *per se* is a publication by writing, printing, signs or

DONOVAN v. FIUMARA

[114 N.C. App. 524 (1994)]

pictures which, when considered alone without innuendo, collo-
quium or explanatory circumstances: (1) charges that a person
has committed an infamous crime; (2) charges a person with
having an infectious disease; (3) tends to impeach a person
in that person's trade or profession; or (4) *otherwise tends
to subject one to ridicule, contempt or disgrace.*

(Emphasis added) (citation omitted). *See also Flake v. News Co.*,
212 N.C. 780, 785-86, 195 S.E. 55, 59-60 (1938):

A libel *per se* is a malicious publication . . . injurious and
defamatory, tending either to blacken the memory of one dead
or the reputation of one who is alive and expose him to public
hatred, contempt or ridicule. . . . [D]efamatory matter . . .
may be libelous and actionable *per se* . . , if they [sic] tend
to expose plaintiff to public hatred, contempt, ridicule, aversion
or disgrace . . . . [B]ut defamatory words to be libelous *per
se* must be susceptible of but one meaning . . . and . . . *tend
to disgrace and degrade the party or hold him up to public
hatred, contempt or ridicule, or cause him to be shunned and
avoided.*

(Emphasis added) (citations omitted).

Professor McCormick comments that formulation of separate
rules for libel and slander appears to have been influenced by
the growth of education and printing, and he believes there developed
a deliberate attempt to tip the scales "against those who deliberate-
ly put down on paper a lasting memorial of *any* lie against a
neighbor's good name" and to handicap those who complain to
the courts for "oral detractions of the more trivial sort." McCormick,
*supra*, at 121. The Ohio Court of Claims, discussing the distinction
in the treatment of damages between libel and slander, commented
as follows:

In an action for libel, damages may be presumed for a great
many categories of publication, considered libelous *per se*,
because of the much greater harm and likelihood of malice
associated with written publications. Thus, it is sufficient that
a written statement merely exposed another to hatred, ridicule,
contempt or disgrace in order for a plaintiff to avoid the re-
quirement of proving special damages.

The law of slander, on the other hand, is much more cir-
cumscribed so that, except for certain limited categories of

statements, an action cannot be maintained upon a slander unless the plaintiff is able to prove that he was the object of special damage.

*Key v. Ohio Dept. of Rehab. & Corr.*, 598 N.E.2d 207, 209 (Ohio Ct. Cl. 1990).

This historical development of distinct rules for libel and slander, as well as the trend not to expand *per se* characterizations, *see, e.g., Hayes*, 832 P.2d at 1024, 1025, coupled with the lack of pronouncement by our Supreme Court specifying an intent to create a new slander *per se* category (especially under the circumstance of no previous case authority), all militate against the application of the *West* language which plaintiff urges upon us. In addition, the critical phrase is dictum not relied upon by the Court for its holding, and the language is also susceptible of an interpretation consistent with existing law prior to *West*.

In sum, therefore, we do not read either the dictum in *West* or the cited cases from our Court to have adopted into the general law of slander a fourth category of slander *per se* as contended by plaintiffs, and we reaffirm the historical distinction between libel and slander. *Tallent*, 57 N.C. App. at 251, 291 S.E.2d at 338 ("defamation includes two distinct torts, libel and slander"); *but see Andrews v. Elliot*, 109 N.C. App. 271, 274, 426 S.E.2d 430, 432 (1993) (blurs differentiation by speaking of plaintiff's action as one for defamation and utilizing language from cases dealing with both libel and slander). Accordingly, based upon our previous analysis, we hold the trial court properly allowed defendant's Rule 12(b)(6) motion.

Nonetheless, assuming *arguendo* that a new class of slander *per se* was created in *West*, which assumption we expressly reject, the bald statement that plaintiffs are "gay and bisexual," standing starkly alone and nothing else appearing, does not as a matter of law hold plaintiffs up to "disgrace, ridicule or contempt" so as to constitute slander *per se* under any purported fourth category thereof.

In addressing the question of whether a false designation of homosexuality is slanderous *per se*, courts across the country not surprisingly have taken varying approaches. In addition to the Texas court's rationale referred to above involving imputation of criminal conduct, *Buck*, 323 S.W.2d at 369; *Head*, 596 S.W.2d at

210, other courts have found the allegation slanderous *per se* as implying immorality or unchastity. *See, e.g., Schomer v. Smidt*, 113 Cal. App. 3d 828, 833-35, 170 Cal. Rptr. 662, 664-66 (1980), *disapproved on other grounds, Miller v. Nestande*, 192 Cal. App. 3d 191, 237 Cal. Rptr. 359 (1987), and *Nazeri v. Missouri Valley College*, 860 S.W.2d 303, 311-12 (Mo. 1993) (both involving female plaintiffs and relying in part on state case and statutory law that allegation of a woman's unchastity constitutes a category of slander *per se*; North Carolina statute creating similar category repealed in 1975); *Manale v. City of New Orleans*, 673 F.2d 122, 125 (5th Cir. 1982) (words "gay," "fruit," and "ya little fruit" directed at fellow police officer defamatory *per se* according to Louisiana definition ["having a tendency to deprive a person of the benefit of public confidence or to injure him in his occupation or reputation,"] but plaintiff under state law contrary to that of North Carolina nonetheless must plead and prove injury.).

Several courts, on the other hand, citing the ongoing evolution of our social attitudes and mores, have come to the conclusion that a false accusation of homosexuality constitutes in essence slander *per quod* requiring allegation and proof of special damages as a condition of recovery. *See, e.g., Hayes*, 832 P.2d at 1026 ("false statements concerning homosexuality are not slander *per se* even though they arise in an employment context and are directed at plaintiff's business reputation"); *Boehm v. American Bankers Ins. Group, Inc.*, 557 So.2d 91, 94 (Fla. Dist. Ct. App. 1990) ("the modern view considering the issue, has not found statements regarding sexual preference to constitute slander per se . . . ."), *rev. denied*, 564 So.2d 1085 (1990); *Key*, 598 N.E.2d at 209 (action based upon accusation one is a homosexual "constitutes slander *per quod* and cannot be maintained unless plaintiff alleges and proves special and actual damages").

[4] We consider the latter cases to express the better view. As stated by the Illinois appellate court, when expressly declining to adopt a category of slander *per se* for false imputations of homosexuality:

We feel that in view of the changing temper of the times[,] such presumed damage to one's reputation, from the type of utterances complained of in the instant case, is insufficient to mandate creation of such a category.

*Moricoli*, 361 N.E.2d at 76. Similarly, as North Carolina progresses through the mid 1990's, we are unable to rule the bare allegation that an individual is "gay" or "bisexual" constitutes today an accusation which, as a matter of law and absent any "extrinsic, explanatory facts," *Badame*, 242 N.C. at 757, 89 S.E.2d at 467, *per se* holds that individual up to "disgrace, ridicule or contempt." *West*, 321 N.C. at 703, 365 S.E.2d at 624. Nonetheless, individuals such as plaintiffs who feel themselves falsely impugned as homosexual are not without remedy in today's society. It remains for them to pursue an action based upon pleading and proof of special damages. *See, e.g., Beane*, 5 N.C. App. at 278, 168 S.E.2d at 238 (citations omitted).

Accordingly, even considering plaintiffs' argument that *West* created a broad new category of slander *per se*, the allegations of their complaint do not set forth a legally sufficient claim for relief based upon that theory. *See, e.g., Hendrix*, 67 N.C. App. at 356, 313 S.E.2d at 26-27.

Based on the foregoing, therefore, the trial court properly granted defendant's Rule 12(b)(6) motion and the court's judgment dismissing plaintiff's complaint is affirmed.

Affirmed.

Judges EAGLES and MARTIN concur.