Carol A. FARMER, Plaintiff,

v.

LOWE'S COMPANIES, INC.;
and Robert L. Tillman,
Defendants.

No. CIV. 5:00CV81.

United States District Court,
W.D. North Carolina,
Statesville Division.

December 12, 2001.

J. Griffin Morgan, Elliott, Pishko, Gelbin & Morgan, Winston-Salem, NC, Judith P. Vladeck, Vladeck, Waldman, Elias & Engelhard, P.C., New York City, for plaintiff.

Norwood Robinson, Michael L. Robinson, John N. Taylor, Jr., Robinson & Lawing, L.L.P., Winston-Salem, NC, for defendants.

### *MEMORANDUM AND ORDER*

THORNBURG, District Judge.

**THIS MATTER** is before the Court on Plaintiff's timely objections to the to the Memorandum and Recommendation of United States Magistrate Judge H. Brent McKnight. Pursuant to standing orders of designation and 28 U.S.C. § 636, this Court referred the parties' motions to the Magistrate Judge for a recommendation as to the disposition of Plaintiff's motion to amend and Defendants' motion to dismiss for failure to state a claim. The Magistrate Judge entered a detailed recommendation that the Defendants' motion should be granted in part and denied in part and that the Plaintiff's motion should be denied.

For the reasons stated below, the Court overrules the Plaintiff's objections in part and sustains them in part, orders the Defendants' motion granted in part and de-

nied in part, and orders the Plaintiff's motion to amend granted.

## I. STANDARD OF REVIEW

The district court conducts a *de novo* review of those portions of a Magistrate Judge's Memorandum and Recommendation to which specific objections are filed. *See* 28 U.S.C. § 636(b). The Plaintiff has filed specific objections to the Recommendations that her claim for libel *per se* should be dismissed for failure to state a claim, that the claim for libel *per quod* be dismissed without prejudice for lack of subject matter jurisdiction, and her motion for leave to amend the complaint should be denied.

Defendants moved for dismissal of all of Plaintiff's claims pursuant to Rule 12(b)(6) for failure to state a claim. In ruling on a motion to dismiss for failure to state a claim, the Court must "accept the factual allegations in the plaintiff['s] complaint and must construe those facts in the light most favorable to the plaintiff[ ].... [Dismissal may occur] only if it appears beyond doubt that the plaintiff[ ] can prove no set of facts in support of [her] claim that would entitle [her] to relief." *Flood v. New Hanover County*, 125 F.3d 249, 251 (4th Cir. 1997); Shepard's, *Motions in Federal Court*, § 5.124, at 367 (2d ed.1991). "To survive a motion under Fed.R.Civ.P. 12(b)(6), a complaint need only outline a recognized legal or equitable claim which sufficiently pinpoints the time, place, and circumstances of the alleged occurrence and which, if proven, will justify some form of relief." *Id.*, § 5.123, at 366. If "relief could be granted under any set of facts that could be proved consistent with the allegations," the motion must be denied. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

## II. FACTUAL BACKGROUND

At the time this suit was filed, Plaintiff Carol Farmer was a Director on the Board of Defendant Lowe's Companies, Inc. (Lowe's), a position she had held since 1994. Defendant Robert Tillman (Tillman) is President, Chief Executive Officer (CEO), and Chairman of the Board of Directors of Defendant Lowe's. Plaintiff received remuneration of approximately $50,000 per annum for her services as a Director. In addition to her work on the Board of Lowe's, Plaintiff serves on several other corporate Boards of Directors and operates her own business as a consultant to various companies. Throughout her service as a Director, Plaintiff complained about what she perceived as the under representation of women and minorities in the employment of Lowe's. She specifically alleges that in 1997 the Board began to study the issue of the under representation of minorities in the company and that she worked to increase the participation of minorities in the company, including through service on the Board. As the March 2000 shareholder's meeting approached, Tillman informed Plaintiff that it was the unanimous decision of the remaining Board members that she not be re-nominated to the Board on the slate proposed by the current Board. At the March 2000 meeting of the Governance Committee of the Board, on which Plaintiff served, she opposed the proposed slate of Directors, which did not include herself, on the grounds that it did not include a woman or racial minority. The proposed slate passed. In several communications from Lowe's regarding the April Shareholder's meeting,[1] the company reported that it was reducing the size of the Board to "reflect the retirement of Carol A. Farmer ... as [a] Class II Director[ ]." The

---

1. These publications include the "Notice of Annual Meeting to Shareholders," and the

"Definitive Proxy Statement" filed with the Securities and Exchange Commission.

Board's slate of proposed Directors was elected by the shareholders at their meeting on May 26, 2000. Plaintiff alleges that Tillman was responsible for the publication of these documents in his positions as President, CEO, and Chairman. Plaintiff alleges that publication of these statements has injured her reputation and has affected, or will affect, her business.

Furthermore, Plaintiff asserts that in 1994 and in 1997 the Board of Lowe's adopted a "sense of the Board" guideline for corporate governance which set out a retirement age for members of the Board. The guideline set the age for all future Board members at 70, no later joining director would be allowed to begin a new term on the Board after his 70th birthday. Anyone on the Board at the time the guideline was passed could remain and begin a new term after their 70th birthday, but these Director were expected to voluntarily resign on or before December 31 of the year in which they reached their 72nd birthday, regardless of completion of their term. No Director, other than Plaintiff, has been removed from the Board or asked not to seek another term except for those who reached the retirement ages set out in the "sense of the Board" guideline. Plaintiff alleges that she was not re-nominated to the Board as a result of her complaints about the numbers of minorities employed by Lowe's.

## III. ANALYSIS

### A. Motion to Amend

In response to Defendants' motion to dismiss the complaint, Plaintiff filed a motion to amend in the hopes of curing some of the pleading defects asserted in Defendants' motion. Once a responsive pleading has been filed, as is the case here, a party may only amend his pleading by leave of court, or with the consent of the other parties. Fed.R.Civ.P. 15(a). Such leave, however, "shall be freely given when jus-tice so requires." *Id.* The Magistrate Judge recommended denial of the motion to amend the complaint on the grounds that even the amended complaint would not overcome the strictures of Rule 12(b)(6). Since futility is the only reason this Court can see to deny Plaintiff's motion to amend, the undersigned will consider the proposed amended complaint for disposition of this motion. Rather than edit the proposed amended complaint based on the Court's partial granting of the Defendants motion to dismiss, the Court will grant the motion to amend in full while dismissing the first and second causes of action for libel as discussed below.

### B. Libel *Per Se*

 The first cause of action in Plaintiff's complaint alleges libel *per se*. The Plaintiff asserts that the statement that she, "retire[d] ... as [a] Class II Director[ ]," is libelous. To qualify as libelous *per se* under North Carolina law, an allegedly defamatory statement must meet certain well established criteria. The North Carolina courts have "defined libel per se as a publication which, when considered alone *without explanatory circumstances:* (1) charges that a person has committed an infamous crime; (2) charges a person with having an infectious disease; (3) tends to impeach a person in that person's trade or profession; or (4) otherwise tends to subject one to ridicule, contempt or disgrace." *Aycock v. Padgett,* 134 N.C.App. 164, 166, 516 S.E.2d 907, 909 (1999); *Gaunt v. Pittaway,* 135 N.C.App. 442, 448, 520 S.E.2d 603, 607–08 (1999), *cert. denied,* 353 N.C. 371, 547 S.E.2d 810 (2001). Whether a publication is one of the type that properly may be deemed libelous *per se* is a question of law to be decided initially by the trial court. *See, Renwick v. News & Observer,* 310 N.C. 312, 317–18, 312 S.E.2d 405, 409 (1984)

(quoting *Flake v. Greensboro News Co.*, 212 N.C. 780, 786, 195 S.E. 55, 60 (1938)); *Sasser v. Rouse*, 35 N.C. 142, 143 (1851). Plaintiff asserts that the statement tends to impeach her in her trade or profession. Statements alleged to impeach a person in their trade or profession must meet two additional criteria. They "(1) must touch the plaintiff in [her] special trade or occupation, and (2) must contain an imputation *necessarily* hurtful in its effect on [her] business." *Market America, Inc. v. Christman–Orth*, 135 N.C.App. 143, 151, 520 S.E.2d 570, 577 (1999) (citations omitted) (emphasis added); *Badame v. Lampke*, 242 N.C. 755, 757, 89 S.E.2d 466, 468 (1955). Furthermore, the allegedly defamatory document must "be defamatory on its face within the four corners thereof." *Flake*, 212 N.C. at 786, 195 S.E. at 60. In other words, "defamatory words to be libelous per se must be susceptible of but one meaning and of such nature that the court can presume as a matter of law that they tend to disgrace and degrade the party or hold [her] up to public hatred, contempt, or ridicule, or cause [her] to be shunned and avoided." *Id.* The statement that Plaintiff had retired from the Board of Directors does not fit those requirements. This statement, without explanation, is not defamatory. It does not hold Plaintiff up to public hatred, contempt or ridicule or cause her to be shunned or avoided. The Court finds, therefore, as a matter of law, that the statement that Plaintiff had retired from her position on the board of directors is not libelous *per se*.

Plaintiff contends that, despite the neutrality of the statement on its face, it must be considered libelous *per se* because the injury she claims to have suffered as a result involved her professional life. This distinction misinterprets the importance of the four categories of libel *per se*. Those four categories describe the types of statements which naturally qualify as the type which "disgrace and degrade the party or hold [her] up to public hatred, contempt, or ridicule, or cause [her] to be shunned and avoided." *Flake, supra.* Plaintiff argues that a statement that a person has retired (as Plaintiff puts it, "is no longer *willing* to do business") is analogous to a statement that a merchant is insolvent. Disregarding the fact that the allegedly defamatory statement included the restriction "as a Class II Director" for the sake of argument, this analogy is inaccurate. A statement that a merchant is insolvent signifies that the merchant is no longer *able* to do business as a result of the financial instability of her business. Furthermore, the statement necessarily implies that the merchant has reached this situation as a result of her own profligate ways. It includes both denotative and connotative meanings that are disgraceful and degrading. The statement that a person has retired has no such meanings or necessary implications. While it concerns her profession, it does not impeach her in that profession. Because the statement that Plaintiff has "retire[d] ... as [a] Class II Director[ ]" is not defamatory on its face, Plaintiff's first cause of action fails to state a claim for which relief can be granted and will be dismissed.

Having determined that Defendants' publication is not libelous *per se*, the Court considers whether the publication is "susceptible of two reasonable interpretations, one of which is defamatory and the other is not" or one "which [is] not obviously defamatory, but which become[s] so when considered in connection with innuendo, colloquium, and explanatory circumstances. This type of libel is libel *per quod*." *Flake*, 212 N.C. at 785, 195 S.E. at 59.

As with the "libel *per se*" test, Plaintiff's pleadings fall far short of satisfying the requirements of "libel *per quod*."

In the publication *sub judice*, Defendants make no attempt to define the word "retirement" by assigning a special or unusual meaning. Thus it will be assigned its ordinary and everyday meaning considering the context in which it appears: *retirement*, "withdrawal from occupation, office of business activity;" *retire*, "withdraw from one's position or occupation." *Oxford English Dictionary* (2d. ed.1989); *Merriman Webster's Collegiate Dictionary* (10th ed.1995). While both dictionaries give additional meanings in other contexts, none is susceptible to an interpretation which is defamatory. Nor could it reasonably become so susceptible "in connection with innuendo, colloquium, and explanatory circumstances." Assuming that Plaintiff was in fact forced out by the Board's action taken in violation of the United States Constitution or federal statute, Plaintiff's action based on libel would fail. If indeed Plaintiff has stated an enforceable claim for relief, it must reside in the provisions of 42 U.S.C. § 1981.

## C. Section 1981 claim

■ Plaintiff's third cause of action is for a violation of 42 U.S.C. § 1981,[2] alleging she was not re-nominated to the slate of elector's proposed to the shareholders by the Board because she had complained about the number of women and minorities who were employed by Lowe's at all levels of the company and sought to increase the number of women and minorities at all levels. Congress added sub-section (b) to § 1981 specifically in response to the Supreme Court's decision in *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132.[3] *Patterson* restricted the scope of § 1981 to discrimination in the initial making of contracts and restricting access to the court system to enforce contractual rights. Every Circuit which has considered the amendment has held that § 1981(b) sets forth a statutory basis for a retaliatory discharge claim under this section. *Andrews v. Lakeshore Rehabilitation Hosp.*, 140 F.3d 1405, 1410 (11th Cir.1998); *Barge v. Anheuser–Busch, Inc.*, 87 F.3d 256 (8th Cir.1996); *Hawkins v. 1115 Legal Serv. Care*, 163 F.3d 684, 693 (2nd Cir.1998); *Carney v. American University*, 151 F.3d 1090, 1094 (D.C.Cir.1998) (assuming without deciding).[4] A retaliatory discharge claim under § 1981 falls under the familiar *McDonnell Douglas* burden shifting scheme of proof. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). To establish a *prima facie* case of retaliatory

**2.** That section reads, in pertinent part:

§ 1981. Equal rights under the law
(a) Statement of equal rights
All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
(b) "Make and enforce contracts" defined
For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.
42 U.S.C. § 1981.

**3.** For a thorough analysis of the *Patterson* decision, the amendment of § 1981, and subsequent case law, *see, e.g. Andrews v. Lakeshore Rehabilitation Hosp.*, 140 F.3d 1405, 1410–11 (11th Cir.1998).

**4.** The *Carney* case, along with several district court cases, notes that the Seventh Circuit is in disagreement with the holding in *Andrews*, citing *Von Zuckerstein v. Argonne Nat'l Lab.*, 984 F.2d 1467, 1472 (7th Cir.1993). However, the *Von Zuckerstein* case was decided on the basis of the law under the *Patterson* decision, not under the amendment to § 1981 of the Civil Rights Act of 1991.

discharge, Plaintiff must, at the 12(b)(6) stage, allege facts which show "(1) that [she] engaged in protected activity; (2) that Defendant took adverse employment action against [her]; and (3) that a causal connection existed between the protected activity and the adverse action." *Derrickson v. Circuit City Stores, Inc.*, 84 F.Supp.2d 679, 694 (D.Md.2000) (citing *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir.1989)). Defendants argue that Plaintiff has failed to allege facts sufficient to support either of the first two elements of a *prima facie* case but admits that Plaintiff has alleged a causal relationship.

### 1. Protected Activity.

■ Plaintiff alleges that she was not re-nominated to her position on the Board because of her complaints concerning the number of women and minorities employed by Lowe's. Defendants argue that none of the facts alleged in the complaint suggest any action on the part of Plaintiff that would rise to the level of "protected activity" for purposes of a § 1981 claim for retaliatory discharge. Because Plaintiff did not allege that Lowe's was engaged in discriminatory hiring and promotional practices, Plaintiff was not engaged in a "protected activity." To qualify for protection under § 1981, the alleged retaliation, "must have been in response to the claimant's assertion of rights that were protected by § 1981." *Hawkins*, 163 F.3d at 693. Plaintiff responds that she has in fact alleged that the under-representation of minorities in the employment of Lowe's was a result of discriminatory activity on the part of the Defendant in violation of § 1981.

The amended complaint does contain the allegation that the under-representation of minorities in the ranks of Lowe's employees is a result of illegal discrimination on the part of Defendant. While the bulk of the allegations of the amended complaint do not assert that any shortcomings in the number of minority employees of Lowe's are the result of any discriminatory practice, Plaintiff does allege in the amended complaint that she had "complained about discrimination against racial minorities." Proposed Amended Complaint, at ¶ 50. While this allegation is by no means specific, the amended complaint, read as a whole and in a light favorable to Plaintiff, does charge that she complained about discriminatory practices on the part of Defendant. *In re MicroStrategy, Inc. Securities Litigation*, 115 F.Supp.2d 620, 627 (E.D.Va. 2000). At least at this stage of the case, Plaintiff has alleged that she engaged in a protected activity. Complaints concerning the level of employment of minorities in an organization have been found to be a protected activity. *Johnson v. University of Cincinnati*, 215 F.3d 561, 573 (6th Cir.), *cert. denied*, 531 U.S. 1052, 121 S.Ct. 657, 148 L.Ed.2d 560 (2000). This type of activity, if proven, falls within the scope of harms Congress sought to remedy by passing § 1981(b). "Plaintiff[ ] alleged that [she] was sanctioned or punished for [her] advocacy on behalf of female and minority hires through [her] termination, or 'expulsion' if you will, from employment by the [Defendant]." *Id.*, at 576. The question remains, however, whether Plaintiff has suffered an adverse employment action in retaliation for her activity.

### 2. Adverse employment action.

■ The second element of a claim under the *McDonnell Douglas* proof scheme for a § 1981 claim is that Plaintiff must allege that she suffered some "adverse employment action." *Derrickson*, 84 F.Supp.2d at 694. Plaintiff has alleged that the adverse action she suffered was that she was not re-nominated to her position on the Board of Directors. This position appears to be a novel one. In order to determine whether Plaintiff has stated a

claim under § 1981 the Court must decide whether the relationship between an individual director and the corporation is a contractual relationship governed by the Section.

Considering the expansion of the terms of § 1981 under the Civil Rights Act of 1991, the case law that has developed in response to this amendment, and the broad remedial purposes Congress intended for the § 1981, the Court finds that, at least as alleged, the "agreement" between Plaintiff and Lowe's was a contractual one, deserving of protection under § 1981. The relationship between a corporation and a member of its board of directors is not an employer-employee relationship under Title VII. *See, e.g. Reil v. Clinton County of New York*, 75 F.Supp.2d 37, 39 (N.D.N.Y.1999). However, the question for purposes of § 1981 is whether the Defendants' allegedly discriminatory actions "affect[ed] at least one of the contractual aspects listed in § 1981(b)." *Spriggs v. Diamond Auto Glass*, 165 F.3d 1015, 1018 (4th Cir.1999). Much of the disagreement between the parties centers on whether the "sense of the board" guideline which set a retirement age for Directors constituted a contract between Plaintiff (and the other Board members) and Defendants under which she would continue to be re-nominated as a Director until reaching retirement age. Plaintiff cites *Spriggs* in support of her contention that her relationship with Defendant is governed by § 1981. Defendants object that *Spriggs* is inapposite in that it dealt with an employment at-will relationship rather than the purported contractual terms of the guideline. This argument is focused in the

wrong place. Regardless of whether the "sense of the board" guideline constitutes a contract for service on the Board until Plaintiff reached retirement age, the relationship between Plaintiff and Defendant was contractual.[5] This proposition is supported by *Spriggs*, even though the relationship between a director and the corporation is not "at-will" employment. The lesson in *Spriggs* teaches that even a contract terminable at-will creates enforceable contract rights. *Id.*, at 1019. Whether or not the contract at issue there had specific terms which either party could seek to enforce, the parties had entered into a contract whereby one had promised to perform services and the other had promised to pay for those services. *Id.*, at 1018.

The same type of relationship existed between Plaintiff and Lowe's. Plaintiff promised to provide her services as a director. Lowe's promised to compensate her for her services. This agreement is a contractual relationship, a promise to provide a service in return for compensation. *Id.* Under § 1981, Lowe's cannot terminate this agreement, or refuse to re-enter into it, on the basis of Plaintiff's participation in protected activity. Lowe's could have declined to re-nominate Plaintiff to the Board for "good cause, bad cause, or no cause at all." *Id.*, at 1020. However, under § 1981, Lowe's cannot decline to re-enter into this contractual relationship for an "illicit cause," such as Plaintiff's engaging in protected activity by opposing the allegedly discriminatory hiring practices of Lowe's. *Id.*

**5.** The Court is not deciding at this time whether the "sense of the Board" guideline was an agreement not to terminate any Board Members until they reached the retirement age. This determination is unnecessary for the Court's ruling on this motion. The Court need not determine what the terms of the

contract were between Plaintiff and Lowe's. As the Fourth Circuit said in *Spriggs*, "[p]roving breach of the underlying contract is neither necessary to a successful § 1981 claim, nor, standing alone, sufficient to make out such a claim." *Spriggs*, 165 F.3d at 1020.

## IV. ORDER

**IT IS, THEREFORE, ORDERED** that the Plaintiff's motion to amend complaint is **ALLOWED,** and the Amended Complaint attached to Plaintiff's motion shall be filed upon entry of this Memorandum and Order.

**IT IS FURTHER ORDERED** that the Defendants' motion to dismiss is **ALLOWED** as to the Plaintiff's First and Second Causes of Action and such claims are hereby **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that the Defendants' motion to dismiss Plaintiff's remaining cause of action is hereby **DENIED.**

The Clerk of Court is requested to schedule an initial pretrial conference forthwith before the undersigned.

## MEMORANDUM AND RECOMMENDATION

McKNIGHT, United States Magistrate Judge.

**THIS MATTER IS BEFORE THE COURT** for a memorandum and recommendation on Defendants' motion to dismiss and Plaintiff's motion to amend. [Docs. 6, 13.]

### I. Factual and procedural background[1]

Defendant Lowe's ("Lowe's") is a North Carolina corporation engaged in the retail sale of home improvement products. On May 26, 2000, Plaintiff completed her second three-year term as a Director on Lowe's Board of Directors. Towards the end of her term, the Board chose not to nominate her for a third term.

Defendants filed the company's Definitive Proxy Statement with the Securities and Exchange Commission, which was in turn sent to all Lowe's shareholders. The filing contained the following statement:

> As recommended by the Governance Committee (acting as the nominating committee) the Board of Directors has reduced the size of the Board to ten effective at the 2000 Annual Meeting to reflect the retirement of Carol A. Farmer and Robert L. Strickland as a Class II Directors.

[Complaint, Doc. 1, para. 26.]

Plaintiff filed this action alleging that this statement constitutes libel and libel *per se.* Further, Plaintiff alleges that the Committee's failure to re-nominate her constitutes racially discriminatory retaliatory termination in violation of 42 U.S.C. § 1981. For the reasons that follow, the undersigned recommends that the motion to dismiss be granted as to the libel *per se* and § 1981 causes of action. Further, because federal jurisdiction in this case was based on the § 1981 claim, the undersigned respectfully recommends that the remaining state law claim, libel, be dismissed, without prejudice, pursuant to 28 U.S.C. § 1367(3). *See, e.g., Gibson v. Tanks,* 70 Fair Emp. Prac. Cas. (BNA) 1380, 930 F.Supp. 1107 (M.D.N.C.1996)

### II. Analysis

In deciding a motion to dismiss, the court accepts as true the facts alleged in the plaintiff's complaint. *Loe v. Armistead,* 582 F.2d 1291, 1292 (4th Cir.1978), *cert. denied,* 446 U.S. 928, 100 S.Ct. 1865, 64 L.Ed.2d 281 (1980); *see also Schatz v. Rosenberg,* 943 F.2d 485, 489 (4th Cir. 1991) (in testing the legal sufficiency of a complaint, the court "construe[s] the factual allegations in the light most favorable to plaintiff"). A complaint, no matter how

---

**1.** Consistent with Rule 12(b)(6) of the Federal Rules of Civil Procedure, these facts are either undisputed or taken in the light most favorable to the Plaintiff.

unartfully pleaded, must survive a motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Loe,* 582 F.2d at 1295 (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

### 1. Libel *per se*

North Carolina state law governs the determination of libel *per se.* Under North Carolina law, to evaluate alleged libel *per se* in the context of a motion to dismiss, the Court must assume that the statement was made in the time and manner alleged in the complaint and then determine whether the statement alleged constitutes libel *per se* as a matter of law.

To do so, the North Carolina Supreme Court held that the "initial question for the court reviewing a claim for libel *per se* is whether the publication is such as to be subject to only one interpretation." *Oates v. Wachovia Bank & Trust Co.,* 205 N.C. 14, 169 S.E. 869, 871 (1933). If the court determines that the publication is subject to only one interpretation, it then "is for the court to say whether that signification is defamatory." *Id.* Only those statements which are capable of only one interpretation and are defamatory are to be submitted to the jury on a theory of libel *per se. See id.; Renwick v. News and Observer Pub. Co.,* 310 N.C. 312, 312 S.E.2d 405 (1984); *Ellis v. Northern Star Co.,* 326 N.C. 219, 388 S.E.2d 127, 130 (1990)("Whether a publication is one of the type that properly may be deemed libelous *per se* is a question of law to be decided initially by the trial court.")

Plaintiff concedes that the statement alleged is capable of more than one interpretation. Indeed, Plaintiff's entire argument as to libel rests on her assertion that "retirement" can be read either (1) as to her position as a Director or (2) as to her career or profession as a marketing consultant. Thus, as a matter of law, Plaintiff cannot meet the threshold test to show libel *per se* under North Carolina law. As Plaintiff can prove no set of facts in support of his claim which would entitle him to relief, *Loe,* 582 F.2d at 1295 (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)), the motion to dismiss should be granted as to libel *per se.*

### 2. § 1981 claim

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant moves to dismiss the § 1981 claim for failure to state a claim for which relief can be granted. Plaintiff alleges that she had a contract with Lowe's and argues that this allegation alone is sufficient to sustain an action under 42 U.S.C.1981. Plaintiff further alleges that, while serving as a Director, she "protested" and "sought to change the intentionally discriminatory employment practices of Lowe's," [doc. 12, p. 11], and that the Committee's decision not to re-nominate her constituted retaliation under 42 U.S.C.1981(a)[2]. Plaintiff's novel argument is unpersuasive for the following reasons.

Farmer alleges that a "contract" between herself and Lowe's arose out of the Board's guidelines setting a mandatory retirement age of seventy for its Directors. As Defendants correctly pointed out, this factually unsupported, conclusory, allegation was insufficient, standing alone, to

---

**2.** 42 U.S.C. § 1981(a) prohibits racial discrimination in the making and enforcing of contracts.

state a claim for a violation of § 1981. In response, instead of supporting her allegation with facts, Plaintiff argues that she merely has to allege that a contract exists to survive the motion to dismiss [3].

Such an argument emasculates Rule 12(b)(6). As Defendants note, the role of Rule 12(b)(6) is to test the legal sufficiency of the complaint and facts must be plead to support the allegations. Because Plaintiff has plead no facts to support the conclusory allegation, as a matter of law, she has failed to state a claim for which relief can be granted [4]. Accordingly, the motion to dismiss should be granted as to this claim.

## III. CONCLUSION

For the reasons stated above, **it is respectfully recommended** that the motion to dismiss be **granted** as to the libel *per se* claim and the § 1981 claim. Because federal jurisdiction in this case was based on the § 1981 claim, the undersigned **further respectfully recommends** that the remaining state law claim, libel, be **dismissed, without prejudice,** pursuant to 28 U.S.C. § 1367(3) [5]. Lastly, after careful consideration, the undersigned concludes that Plaintiff's proposed amendments of the complaint do not affect the above conclusions, and as such, would be futile. **It is therefore respectfully recommended that** the motion to amend be **denied.**

**3.** The case cited for this proposition, *Spriggs v. Diamond Auto Glass,* 165 F.3d 1015 (1999), does not even address this issue, much less support Plaintiff's argument.

**4.** Even if this allegation were factually supported, the undersigned questions whether, as a matter of law, any facts could support a § 1981 claim in this context. The undersigned has been unable to locate any case even alleging a violation of § 1981 arising out of a board member's term, much less one that allowed it to proceed.

### Notice of Appeal Rights

The parties are hereby advised that, pursuant to 28 U.S.C. § 636(b)(1)(C), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within ten (10) days after service of same. Failure to file written objections to this Memorandum and Recommendation within ten days after being served with a copy will bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Services Automobile Assoc.,* 79 F.3d 1415 (5th Cir.1996); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *United States v. Schronce,* 727 F.2d 91 (4th Cir.), *cert. denied,* 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984).

January 31, 2001.

**5.** The undersigned carefully considered Defendants' well-reasoned motion on this issue, and acknowledges that under the cases cited, which set out what is deemed "defamatory" as a matter of law under North Carolina law, suggest that the statement at issue does not reach that level. However, none of those cases was decided in the context of a 12(b)(6) motion. Accordingly, in an abundance of caution, this Court does not recommend dismissal with prejudice on this issue.