JAMES E. AYCOCK, Plaintiff v. MACK PADGETT, JOHN DOE, and JANE DOE, Defendants

No. COA98-782

(Filed 6 July 1999)

**1. Libel and Slander— libel per se—infamous crime—failure to state a claim**

The trial court did not err by dismissing a defamation action for failure to state a claim upon which relief could be granted where plaintiff alleged statements by defendant that plaintiff was not a resident of the town in which he was running for office, a felony, but there is a need for explanatory circumstances for the listener or reader to know that plaintiff had committed an infamous crime. Any interpretation of the comments as given does not rise to the level of an actionable defamation claim.

**2. Libel and Slander— libel per quod—town board candidate—not resident in town—failure to state a claim**

The trial court correctly dismissed a defamation action for failure to state a claim upon which relief could be granted where plaintiff alleged statements by defendant that plaintiff was not a resident of the town in which he was running for office. The damage plaintiff claims to have suffered is the loss of a seat on the town board; in essence, a suit to recover damages for a lost election. It is not the place of the Court of Appeals to engage in a post-election analysis of the decision made by the voters.

Appeal by plaintiff from order entered 20 May 1998 by Judge Claude S. Sitton in Buncombe County Superior Court. Heard in the Court of Appeals 23 February 1999.

*Frank B. Aycock, III, for plaintiff-appellant.*

*Van Winkle, Buck, Wall, Starnes and Davis, P.A., by Michelle Rippon and Stephen B. Williamson, for defendant-appellee Padgett.*

LEWIS, Judge.

Plaintiff filed a complaint on 10 February 1998 in response to allegedly defamatory comments made by defendant Padgett ("Padgett") at a public meeting of the Black Mountain Board of

Aldermen ("the Board") on or about 13 October 1997. Defendants John Doe and Jane Doe were named as conspirators whose identities were to be revealed through discovery. Plaintiff was unable to complete discovery because on 20 May 1998, the trial court granted Padgett's motion to dismiss pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure.

The factual background of this case is derived from plaintiff's complaint, which must be taken as true at this stage in the proceedings. *See, e.g.*, *Harris v. NCNB*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987). Plaintiff was one of twelve people seeking election to one of five seats on the Board in 1997. To run for this office, plaintiff had to swear when he filed for election in July of 1997 that he was a resident of Black Mountain.

Plaintiff contends that Padgett, knowing that a reporter from The Black Mountain News would be present at the 13 October 1997 meeting of the Board ("the meeting"), placed his name on the meeting's agenda for the published purpose of speaking on sewer lines. His actual purpose, as alleged in the complaint, was to defame plaintiff in public and the press and thereby damage plaintiff's chances of winning the election.

Plaintiff claims Padgett made the following statements at the meeting: "I know that [plaintiff] was not living in town when he applied to run for the town board"; "A lot of things [plaintiff] said in the paper when he was editor and owner hurt a lot of people running for the board. He said that in his opinion a particular person should not be elected"; and "I feel like [plaintiff] was not living in town at that particular time, when he was running." According to plaintiff, the Black Mountain News published a three-column article on 16 October 1997 entitled "Man alleges filing violations," including a photograph of plaintiff and printing at least one of Padgett's statements from the meeting. On 4 November 1997, plaintiff finished sixth in the race for five seats on the Board. He brought this suit the following February, making three defamation claims, one claim for unfair trade practices, and one claim for punitive damages. From the dismissal of his suit, plaintiff appeals.

[1] Plaintiff first argues that the trial court erred in dismissing his three defamation claims. There are two separate torts encompassed by the term "defamation": libel and slander. Generally, "libel is written while slander is oral." *Phillips v. Winston-Salem/Forsyth County*

*Bd. of Educ.*, 117 N.C. App. 274, 277, 450 S.E.2d 753, 756 (1994), *disc. review denied*, 340 N.C. 115, 456 S.E.2d 318 (1995). Plaintiff's complaint refers to Padgett's remarks as libel, and he argues on appeal that the tort was libel because "[a]lthough defendant's words were oral, he intended to have them published in the Black Mountain News." Without conceding defamation, Padgett states in his brief that because plaintiff alleged that Padgett's communications were oral, they must be analyzed as slander. Our case law addresses this dispute as follows: "[W]hen defamatory words are spoken with the intent that the words be reduced to writing, and the words are in fact written, the publication is both slander and libel." *Id.* at 278, 450 S.E.2d at 756 (quoting *Clark v. Brown*, 99 N.C. App. 255, 261, 393 S.E.2d 134, 137, *disc. review denied*, 327 N.C. 426, 395 S.E.2d 675 (1990)). However, since plaintiff's complaint and appellate arguments are based entirely on libel, we address only libel in our opinion.

This Court has defined libel *per se* as

a publication which, *when considered alone without explanatory circumstances*: (1) charges that a person has committed an infamous crime; (2) charges a person with having an infectious disease; (3) tends to impeach a person in that person's trade or profession; or (4) otherwise tends to subject one to ridicule, contempt or disgrace.

*Id.* at 277, 450 S.E.2d at 756 (emphasis added). Clearly, Padgett's comments did not address infectious diseases. They did not impeach plaintiff in his trade or profession because he was not a professional politician, was no longer with the Black Mountain News, and was not paid to reside in Black Mountain. They did not subject plaintiff "to ridicule, contempt or disgrace" within the traditional meaning of those terms, either. There is a question, though, as to whether Padgett accused plaintiff of an infamous crime.

"At common law, . . . an infamous crime is one whose commission brings infamy upon a convicted person, rendering him unfit and incompetent to testify as a witness, such crimes being treason, felony, and *crimen falsi*." *State v. Clemmons*, 100 N.C. App. 286, 292, 396 S.E.2d 616, 619 (1990) (quoting *State v. Surles*, 230 N.C. 272, 283-84, 52 S.E.2d 880, 888 (1949) (Ervin, J., dissenting, quoting Burdick: *Law of Crimes*, section 87)). To say that a person was not a resident of the town in which he is running for office at the time he filed for election is to accuse him of a felony. According to our statutes, it is a Class I felony "[f]or any person knowingly to swear falsely with respect

to any matter pertaining to any primary or election." N.C. Gen. Stat. § 163-275(4) (1995); *see also* N.C. Gen. Stat. § 163-275(1) (1995).

Regardless of whether this particular felony rises to the level of an infamous crime, there would seem to be a need for explanatory circumstances for the listener or reader here to know that plaintiff had committed an infamous crime. Any accusation of a crime was made implicitly by Padgett, and it cannot be seriously contended that this particular felony carries with it the infamy accorded to those such as murder and treason. While we need not determine whether there are particular Class I felonies which are also infamous crimes, it is worth noting that there are many Class I felonies of which citizens of this state could be accused that would probably require further explanation before becoming libelous. *See, e.g.,* N.C. Gen. Stat. §§ 14-280 (1993) (throwing rocks at railroad cars); 14-309.14 (Cum. Supp. 1998) (offering a prize of fifty dollars ($50.00) or greater in a beach bingo game); 14-401.11(a)(1) (1993) (distributing Halloween candy which might cause a person mild physical discomfort without any lasting effect); and 113-209 (1997) (taking polluted shellfish at night). Plaintiff's complaint did not make out a valid case of libel *per se*, and the trial court properly dismissed it on that ground.

In his second claim for relief, plaintiff makes the alternative argument that Padgett's comments were "susceptible of two interpretations[,] one of which was defamatory and the other not." We disagree. As noted above, we find that the statements as originally spoken, with no further explanation, are not defamatory. Any interpretation of these comments as they were given does not rise to the level of an actionable defamation claim.

**[2]** Defendant's third claim for relief is the alternative argument that "the publications were not obviously defamatory but when considered with innuendo, colloquium, and explanatory circumstances became libelous, [causing] plaintiff general and special damages." This is, in essence, an argument that the comments were actionable *per quod. See, e.g., U v. Duke University*, 91 N.C. App. 171, 181, 371 S.E.2d 701, 708, *disc. review denied*, 323 N.C. 629, 374 S.E.2d 590 (1988). The damage plaintiff claims to have suffered, as required to recover for libel *per quod*, is the loss of a seat on the Board which in turn damaged "his opportunity for employment" and resulted in a "loss of income and benefits derived therefrom."

This is, in essence, a suit to recover damages for a lost election. We do not consider it the place of this Court to engage in a post-

election analysis of the decisions made by the voters of Black Mountain in this or any other election. Although this appears to be the first time this question has been raised in this manner in North Carolina, other jurisdictions have similarly concluded that the notion that the loss of an election constitutes special damages for which a court may grant relief is far too speculative and uncertain to entertain. *See, e.g., Southwestern Publishing Co. v. Horsey*, 230 F.2d 319, 322-23 (9th Cir. 1956) (noting that "[t]here may be not less than a thousand factors which enter into the vagaries of an election"); *Beverly v. Observer Pub. Co.*, 77 S.E.2d 80, 81 (Ga. App. 1953) (holding that "[s]pecial damages for the loss of a public office in an election for that office are too remote and speculative to be recoverable"); *Otero v. Ewing*, 110 So. 648, 650 (La. 1926) (stating that "[i]t is common knowledge that there are many surprises at the result of elections by the people"); *see also* 50 Am. Jur. 2d *Libel and Slander* § 234 ("A plaintiff seeking to show defamation must show more than the fact that a misrepresentation caused the candidate to lose votes; a plaintiff must show that the misrepresentation was defamatory on its face."). In light of the facts and circumstances of this case, plaintiff was not entitled to relief on any of his three defamation claims. The dismissal of these claims is affirmed.

Because we hold that Padgett's statements did not constitute actionable defamation, it follows that plaintiff's fourth and fifth claims for relief, unfair trade practices and punitive damages based on the alleged defamation, are without legal foundation. As such, we need not address plaintiff's two remaining arguments on appeal regarding the trial court's decision to dismiss these claims.

Plaintiff's complaint failed to state a claim upon which relief can be granted. Defendant's motion to dismiss the complaint was properly granted. *See* N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) (1990).

Affirmed.

Judges GREENE and HORTON concur.